* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Rowell with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as: *Page 2 
 STIPULATIONS
1. Plaintiff contends he was injured by accident on the job, arising out of and in the course and scope of his employment with defendant on or about December 28, 2004, which defendants deny.
2. It is stipulated that the employee/employer relationship existed at the time of the alleged accident.
3. It is stipulated that AIG Claim Services, Inc. was the carrier on the risk at the time of the alleged accident.
4. It is stipulated that the parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged accident, the employer employing the requisite number of employees to be bound under the provisions of said Act.
5. It is stipulated that the North Carolina Industrial Commission has jurisdiction over this claim.
6. It is stipulated that the average weekly wage of plaintiff at the time of the alleged accident was $850.60 which yields the maximum compensation rate of $567.00 per week.
7. At the hearing before the deputy commissioner, plaintiff contended that the issues to be answered by the Industrial Commission were:
 a. Did plaintiff sustain an injury by accident arising out of and in the course and scope of his employment on or about December 28, 2004?
 b. If so, whether plaintiff is entitled to receive medical benefits including both medical evaluation and treatment? *Page 3 
 c. If so, whether plaintiff is entitled to receive temporary total disability benefits from December 28, 2004 and continuing until his return to work on June 20, 2005?
 d. If so, whether plaintiff is entitled to receive permanent partial disability benefits?
8. At the hearing defendants contented that the issues to be answered by the Industrial Commission were:
 a. Whether plaintiff sustained a compensable injury by accident to his right shoulder on December 28, 2004 or whether plaintiff was performing his normal job duties and experienced a non-compensable aggravation of his preexisting shoulder condition
9. The parties stipulated into evidence as Stipulated Exhibit # 1, Pre-Trial agreement, as modified and initialed by the parties.
10. The parties Stipulated into evidence as Stipulated Exhibit # 2, as modified and initialed by the parties, medical records, I.C. Forms, as referenced on page one of the table of contents.
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the hearing before the deputy commissioner, plaintiff was 49 years old with a high school education. Plaintiff had been working in the power line construction industry since *Page 4 
1985. As part of his job, he was regularly called upon to set poles, pull wire and set up substations.
2. On December 28, 2004, plaintiff was working as a foreman for defendant. As part of his duties, plaintiff would oversee the crews and would also have to get into the aerial lift bucket and do the work himself.
3. On December 28, 2004, while performing his work duties plaintiff was raised up in the air in an aerial-lift bucket in order to change a power line pole. After he had completed his task, the bucket was set back in the cradle so that plaintiff could make his exit from the bucket. According to plaintiff's testimony, in order to exit the bucket, he initiated the method he had routinely used over the years. He placed his hands on the rim and lifted himself up with his arms so that he could swing his feet up over the edge to climb out of the bucket. As he began the swinging motion, he felt like he was stabbed in his right shoulder and he fell back down into the bucket. Plaintiff stated his arms were jerked backwards in what he described as a "chicken wing" posture. According to plaintiff, he had never fallen back like this before and this was a one time unique experience for him. After this incident, plaintiff placed his backside on the rim in order to get out of the bucket and he swung his legs over. When he got out of the bucket, he immediately told everyone that he had hurt his right shoulder, including his supervisor, Mike Payne.
4. Plaintiff testified that his method used to exit was normal and part of his regular job duties. According to plaintiff, the swinging motion he utilized was how he had normally performed his regular job duties in getting out of the aerial lift-bucket. So the swinging motion itself was part of his regular job duty he had utilized over the years in getting out the lift-bucket, and it was during this swinging motion that he initially felt the excruciating pain in his right *Page 5 
shoulder. According to plaintiff, the only unusual event that took place on December 28, 2004 while getting out of the lift-bucket was the initial excruciating pain he felt in his right shoulder. Plaintiff agreed that he knew when he felt this initial excruciating pain that he had already injured his shoulder and that this excruciating pain is what caused him to fall back into the bucket. Therefore, this initial pain that plaintiff felt, almost causing plaintiff to pass out, was associated with the performance of this normal swinging motion utilized by plaintiff in the performance of his regular duties.
5. On February 14, 2005, plaintiff underwent surgery on his right shoulder. After surgery, plaintiff regained his strength by attending physical therapy three days per week for three to four months. Plaintiff also took Percocet and Ibuprofen to help with the pain.
6. On June 20, 2005, plaintiff returned to work doing his regular job.
7. Larry Richardson, defendant-employer's workers' compensation coordinator, testified at the hearing on behalf of defendants.
8. Mr. Richardson spoke with plaintiff immediately after the incident to conduct an investigation. As part of his investigation, he asked plaintiff to provide a written statement about how the injury occurred. On January 7, 2005, ten days after the alleged accident, plaintiff wrote the following:
 Larry, on December 28, 2004, after finishing a job, I was attempting to climb out of the aerial lift bucket. I placed my hands on the rim of the bucket, lifting myself up with my arms, then swinging my feet up over the edge to climb out, as I have done for almost 20 years. It was during the swinging motion that I felt excruciating pain in my right shoulder, almost causing me to pass out. I gathered my senses and continued climbing down. This happened around 2:00 p.m. and 2:30 p.m. I told everyone on the crew that I did something to my shoulder. I then called Mike Payne on the radio and told him what happened and asked him to take me home, which he did. For medical information, you can *Page 6 
contact my family doctor, Dr. John Williams, who later referred me to orthopaedic surgeon, Dr. Jerome Jennings.
9. Following receipt of plaintiff's statement, plaintiff was verbally told his claim was going to be denied under workers' compensation. Plaintiff received medical coverage through his general health insurance carrier and was paid short-term disability for the time he was out of work due to the injury.
10. Defendants never filed a Form 19 or Form 61 denying plaintiff's claim.
11. Plaintiff did not ever relate to his employer that his arms were jerked upwards and backwards when he fell back into the aerial lift bucket on the day of the alleged injury by accident.
12. On January 5, 2005, plaintiff came under the care of Dr. Jennings upon referral from his family doctor, Dr. Williams. As part of his office visit, plaintiff was asked to complete a patient information sheet. This sheet was signed and dated by plaintiff. On this form, plaintiff indicated that the reason he presented to the doctor that day was for right shoulder pain. Plaintiff indicated December 28, 2004 as the date of accident or onset of symptoms and described the accident as "Pushing with arms to get out of aerial lift bucket."
13. On January 6, 2005, plaintiff presented to Dr. Jennings. This medical record documents that the history of present illness was "This patient injured his right shoulder on December 28, 2004 when he was pushing with his arms to get out of an aerial lift bucket and felt pain in his right shoulder." Dr. Jennings agreed that plaintiff's description of the incident in plaintiff's e-mail correspondence to Larry Richardson on January 7, 2005 corresponded and was consistent with his office note of January 6, 2005.
14. On May 25, 2006, Dr. Jennings testified by deposition testimony that the only description of the injury given by plaintiff was that he injured his right shoulder on December *Page 7 
28, 2004, when he was pushing his arms to get out of an aerial lift bucket and felt pain in his right shoulder.
15. Plaintiff's counsel related to Dr. Jennings plaintiff's testimony at hearing, that he swung up in the aerial lift bucket, he felt like someone stabbed him in the shoulder, fell down into the bucket with his arms still on the rim and his arms were jerked upwards and backwards. Dr. Jennings was asked if he had an opinion whether the falling down in the bucket with his arms jerking them upwards and backwards added to his problems or to his injuries. Dr. Jennings was unable to state to a reasonable degree of medical certainty that the falling down into the bucket caused plaintiff's medical condition. Dr. Jennings stated it was possible that the falling down into the bucket made things worse.
16. Plaintiff's counsel then asked, "what effect, if any, could the falling down into the bucket with the arms jerked upwards and backwards have had on Mr. Chavers' condition." Dr. Jennings responded, "And again, I don't know. I'm just saying it's possible it could have added to the injury, but there is no way for me to know that. There's no possible way for me to know. No possible way for anybody to know, not even Mr. Chavers."
17. Dr. Jennings further testified that he did not remember plaintiff telling him that he had fallen down into the bucket. Dr. Jennings stated that in his mind plaintiff had an injury related to getting out of a bucket and nothing else was important as that was enough information for him to make the correct diagnosis and prescribe the correct treatment for plaintiff's condition.
18. Dr. Jennings' opinion remained, throughout the entire deposition, that plaintiff injured his shoulder on December 28, 2004 when he was pushing with his arms to get out of the aerial lift bucket and felt pain in his right shoulder. *Page 8 
19. After surgery, Dr. Jennings treated plaintiff until he had reached maximum medical improvement, was released to return to work without restrictions, and was assigned a 12% permanent partial disability rating to his right upper extremity.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission has the duty and authority to resolve conflicts in the evidence and the conflicts need not be resolved in favor of the claimant. Cauble v. Macke Company, 78 N.C. App. 793,338 S.E.2d 320 (1986).
2. The greater weight of the evidence does not support a finding that plaintiff sustained a compensable injury by accident that arose out of and in the course of his employment with defendant on December 28, 2004. N.C. Gen. Stat.§ 97-2(6).
3. In order for an injury to be compensable, the injury must be caused by an accident. The accident must be a separate event preceding and causing the injury. The mere fact that there was an injury does not establish the fact of accident. Bigelow v. Tire Sales Co.,12 N.C. App. 220, 182 S.E.2d 856 (1971).
4. Accident means a fortuitous event or some unusual, unexpected or untoward incident. O'Mary v. Land Clearing Corp., 261 N.C. 508,135 S.E.2d 193 (1964). Plaintiff cannot sustain a compensable injury if the injury occurred while he was performing his regular job duties.
5. The burden is on plaintiff to prove that there was something unusual about the manner he was performing his job on December 28, 2004. A review of the competent and credible evidence in its entirety, including plaintiff's description to his employer dated January 7, *Page 9 
2005 and the medical records, does not support a showing that anything unusual took place on December 28, 2004 when plaintiff exited the aerial-lift bucket. This review supports that plaintiff had utilized this same method to exit routinely for some twenty (20) years.
6. After due consideration to the competent and credible evidence in its entirety, greater weight is given to the record evidence which does not support or corroborate plaintiff's allegations that he sustained an injury by accident on December 28, 2004. Therefore, plaintiff's description given on his Form 18 and plaintiff's testimony at the hearing, of falling back into the bucket and having his arms jerked upwards and backwards, is found not to be credible.
7. Furthermore, even if the description of the incident that plaintiff related at the hearing were found to be true, plaintiff did not prove that his shoulder injury was caused by falling back into the bucket or that this action significantly contributed to or aggravated his shoulder injury through competent medical testimony. Ballenger v. BurrisIndustries, Inc., 66 N.C. App. 556, 567, 311 S.E.2d 881, 887 (1984).
8. The greater weight of the competent, credible evidence shows that while plaintiff did sustain an injury to his shoulder on December 28, 2004, this injury was not an "injury by accident" and is therefore not compensable.
9. Pursuant to N.C. Gen. Stat. § 97-18(j), when an employee files a claim for compensation with the Commission, the Commission may order reasonable sanctions against an employer or insurer which does not, within 30 days following notice of a claim, or within such reasonable additional time as the Commission may allow, do one of the following:
 (a). Notify the Commission and the employee in writing that it is admitting the employee's right to compensation; *Page 10 
 (b). Notify the Commission and the employee that it denies the employee's right to compensation by filing the appropriate Industrial Commission Form; or
 (c). Initiate payments without prejudice and without liability pursuant to N.C. Gen. Stat. § 97-18(d).
N.C. Gen. Stat. § 97-18(j).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for indemnity benefits is DENIED.
2. Plaintiff's claim for medical benefits is DENIED.
3. Each side shall pay the costs associated with this hearing.
4. Defendants shall pay to the Industrial Commission a penalty in the amount $1000 for failure to file the appropriate North Carolina Industrial Commission Forms pursuant to N.C. Gen. Stat. § 97-18.
This the 9th day of August 2007.
S/_______________________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________________ DIANNE C. SELLERS COMMISSIONER
 S/_______________________ CHRISTOPHER SCOTT COMMISSIONER